# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| RANDALL McWILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 08-3159-CV-S-NKL-SSA |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**ORDER**

Plaintiff Randall McWilliams ("Plaintiff") challenges the Social Security Commissioner's ("Commissioner") denial of his claim for disability insurance benefits and Supplemental Security income under the Social Security Act ("Act"), 42 U.S.C. §§ 401, *et seq*, and 1381 *et seq*. After an administrative hearing, on December 17, 2007, an Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. The decision of the ALJ stands as the final decision of the Commissioner. Plaintiff seeks judicial review, petitioning for reversal of the ALJ's decision and an award of benefits. The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Because the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole, the Court grants Plaintiff's petition in part.

1

## I. Factual Background[1]

Plaintiff's application for disability benefits states he was born in 1955. He claims that he became disabled beginning December 15, 2003, at age 47. He has a tenth grade education.

### A. Medical History

Plaintiff emphasizes his mental and physical health history concerning treatment for mental health issues in arguing that the ALJ erroneously found that he does not have a "severe" impairment entitling him to benefits.

Medical records from the fall of 2003 indicate that Plaintiff was diagnosed with depression and prescribed antidepressants at Citizens Memorial Healthcare. In February 2004, Gretchen Brandhorst, Psy. D., and Sandy Bowers, Psy. D., examined Plaintiff at the request of the Missouri office of disability determinations. Plaintiff was given psychological testing which was determined to be invalid and suggestive of an individual who was malingering. Plaintiff was diagnosed with methamphetamine withdrawal, methamphetamine dependence in early remission, and malingering.

Records from early 2004 show that Plaintiff was examined by Dr. Eric Davis, D.O. Dr. Davis diagnosed a hernia, noting history of hernia repair, as well as depression, general anxiety disorder, sleep problems, and shortness or breath and wheezing. Dr. Davis told Plaintiff to stop smoking and prescribed antidepressants.

---

[1] Portions of the parties' briefs are adopted without quotation designated.

In January 2005, Dr. David Lutz, a clinical psychologist, examined Plaintiff at the request of the Missouri office of disability determinations. Plaintiff reported a history of methamphetamine use to Dr. Lutz; Plaintiff stated that he had last used methamphetamine weeks before meeting with Dr. Lutz. He reported difficulty sleeping. Plaintiff said he had stopped taking his antidepressants due to cost, though they had helped his symptoms. Plaintiff reported that he experienced shortness of breath and continued to smoke a pack of cigarettes daily. Plaintiff said he cooked, shopped, and cleaned for himself, and that he managed his own finances. Plaintiff told Dr. Lutz that he had lost past jobs due to sexual harassment charges and insubordination. Dr. Lutz performed objective intellectual and memory testing.

Based on Plaintiff's subjective reports, Dr. Lutz diagnosed amphetamine dependence, as well as adjustment disorder with mixed anxiety and depressed mood. Dr. Lutz opined that the latter might meet the criteria for depressive disorder or that it could meet the criteria for major depression, but stated "testing noted in the reviewed reports indicated that he greatly exaggerated his symptoms." Dr. Lutz noted an unspecified personality disorder, including antisocial behavior and borderline characteristics. He also indicated that Plaintiff had difficulty breathing and numbness. Dr. Lutz assessed a Global Axis Functioning ("GAF") score of 55.[2] Dr. Lutz stated that Plaintiff seemed to be able to understand and

---

[2] The GAF scale represents a clinician's judgment of an individual's overall level of functioning. It is to be rated with respect to psychological, social, and occupational functioning, and should not include physical or environmental limitations. A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, shoplifting) or serious impairment of social or occupational functioning (e.g., no friends, unable to keep a job). A GAF

remember simple, moderately complex, and probably complex instructions. Dr. Lutz said that Plaintiff seemed to be able to sustain concentration on simple, moderately complex, and probably complex tasks. Dr. Lutz opined that Plaintiff seemed to interact in most social situations and to be able to adapt to his environment.

In February 2005, Plaintiff presented to Springfield Neurological and Spine Institute at the request of Missouri's disability determinations office with neck and back, wrist, knee, and ankle pain, as well as numbness in hands and lower extremities and chronic bronchitis. Other than Plaintiff's complaints of pain, examination results were normal. Dr. Jeffrey Woodward noted that Plaintiff had chronic bronchitis with no acute respiratory distress on the day of the visit, as well as pain with mild nerve conduction abnormality. Dr. Woodward opined that Plaintiff could perform physical and work activities within the following guidelines: no lifting restriction, no sitting restriction, stand/walk up to four hours per day, occasional stair climbing, occasional squatting/kneeling, half-time repetitive hand manipulation, no environmental or visual/hearing limitations.

Also in February 2005, Plaintiff was admitted to the hospital with symptoms of depression and suicidal/homicidal thoughts. He was in the midst of a divorce. Toxicology reports were positive for amphetamine use. His final diagnosis was major depression,

---

score of 51 to 60 represents moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficultly in social, occupational functioning (e.g., few friends, conflicts with peers or co-workers). A GAF score of 61 to 70 indicated some mild symptoms or some difficulty in social or occupational functioning (e.g., occasional absenteeism or theft within the household). *See Diagnostic and Statistical Manual of Mental Disorders,* 32, 34 (4th ed. text revised 2000) (DSM-IV-TR).

recurrent, moderate, not psychotic with amphetamine abuse/dependent, personality disorder with sociopathic features, asthma, and back pain. His GAF was assessed at 35 on admission and 65 on discharge.

A September 2005 non-examining consulting physician's "check box" report indicates mild limitations with activities of daily living, social functioning, concentration, persistence and pace. The report concludes that Plaintiff's impairments were not severe.

Also in September 2005, Plaintiff was admitted to the hospital for psychiatric care. He reported he was going through a divorce and had violent thoughts concerning himself and his ex-wife. Dr. Alok Jain noted complaints of back pain. Dr. Jain stated that Plaintiff's symptoms were consistent with bipolar disorder, noting numerous psychiatric symptoms (including depressed mood, rapid mood swings, impulsivity, and panic disorder). Plaintiff had stopped taking prescribed medications and continued to smoke. Dr. Jain advised him to quit smoking. Dr. Jain recommended various medications. On admission, Plaintiff's GAF was assessed at 30; it was assessed at 85 on discharge.

In October 2005, Plaintiff presented to Cox Health Systems with chest pain; his cardiac workup was negative. Plaintiff was tearful. After a psychiatric consult, Plaintiff was transferred to an inpatient psychiatric facility for inpatient treatment.

In August 2006, Plaintiff was admitted again for psychiatric care. He had suicidal thoughts and homicidal thoughts concerning his ex-wife. He was abusing marijuana. He had not been taking his medications. On admission, he was assessed with a GAF of 20. His medications were adjusted and he improved. He was discharged the same day.

5

An October 2006 MRI investigating Plaintiff's claim of back pain showed mild degenerative changes. In March 2007, Plaintiff had hernia repair surgery.

Plaintiff began seeing Dr. Monte Kahler sometime between March and May 2007. In May 2007, Plaintiff presented to Dr. Kahler with depression, respiratory problems, and backache; objective physical testing showed normal results.

In July 2007, Plaintiff presented to Wayne Wolf, D.O., with hernia problems. It appears he underwent further surgery in August 2007.

An August 2007 "check box" Medical Source Statement - Physical from Dr. Kahler indicates that Plaintiff: had marked physical limitations; had severe limitation for physical strength factors (lifting/carrying/standing/sitting) on the form; had several extreme postural limitations; and had several environmental limitations. A separate August 2007 Medical Source Statement - Mental from Dr. Kahler indicates that Plaintiff was: (1) moderately limited in the ability to remember locations and work-like procedures, understand and remember detailed instructions, and carry out detailed instructions; (2) markedly limited in his ability to sustain an ordinary routine without special supervision and to travel in unfamiliar places or use public transportation; and (3) extremely limited in the ability to maintain attention/concentration, perform activities on schedule, complete a normal workweek without interruption from psychological symptoms, ask simple questions, accept instructions and respond appropriate, get along with co-workers, respond appropriately to changes in the work setting, and set realistic goals. The statement also indicated that Plaintiff was not significantly limited in the ability to understand/remember/follow short and simple

instructions, make simple work-related decisions, interact with the general public, maintain socially appropriate behavior, and be aware of normal hazards.

### B. Plaintiff's Testimony

At the hearing in September 2007, Plaintiff testified about his medical history. He indicated that he had missed several doctor's appointments, though he did have an upcoming psychiatry appointment. Plaintiff testified that continuous "pain and hurt" kept him from working, as well as issues with controlling his temper and mood swings. Plaintiff said he had previously worked as a car salesman, truck driver, chicken cutter, floor polisher, and in a fast food restaurant; he was fired from several of those jobs for having problems with his temper and was also fired for sexual harassment.

### C. The ALJ's Decision

The ALJ held a hearing at which Plaintiff testified in September 2007. In a December 17, 2007, written decision, the ALJ found that Plaintiff was not disabled. In the decision, the ALJ set forth the requisite five-step process for making disability determinations. *See* 20 C.F.R. §§ 404.1520, 416.920; *Fastner v. Barnhart*, 324 F.3d 981, 983-84 (8th Cir.2003) (describing the five-step process).

The ALJ determined that Plaintiff suffered from bronchitis, a personality disorder, and situational depression. The ALJ then set forth the applicable standards for evaluating Plaintiff's credibility and whether those impairments could reasonably be expected to produce the alleged symptoms.

The ALJ considered the medical evidence concerning Plaintiff's lung function, hernia complaints, and back pain. The ALJ concluded any impairment from these issues were non-severe.

The ALJ discussed Plaintiff's substance abuse history. He noted Plaintiff's history of illegal drug abuse and dependence; the ALJ commented that Plaintiff has not undergone aggressive medical treatment, frequent hospitalization, or formal therapy for substance abuse. The ALJ stated that the medical evidence indicates that Plaintiff's drug use is an intermittent and situational response to stress, including marital difficulty. The ALJ found that substance abuse was a non-severe impairment.

Finally, the ALJ considered Plaintiff's history of depression. The ALJ acknowledged Plaintiff's 2005 and 2006 hospitalizations. The ALJ noted that Plaintiff was chemically impaired and/or off his medications during the acute exacerbations of his illness.

The ALJ considered the opinion evidence. He found that, though Dr. Jain stated that Plaintiff needed to be on disability in September 2005, Dr. Jain's August 2006 report showed rapid improvement with medication and abstinence from illegal drugs, as well as a GAF of 70. The ALJ determined that the latter opinion was based on extended familiarity with Plaintiff, and gave that opinion great weight.

The ALJ found that Dr. Lutz's opinion supported that of Dr. Jain, who opined that Plaintiff could meet the demands of work. The ALJ also stated that Dr. Brandhorst opined that Plaintiff was not disabled. While according little weight to the state agency consulting

physician's opinions that Plaintiff was not disabled, the ALJ did note that they are entitled to some weight.

The ALJ mentioned Dr. Kahler's opinion. The ALJ stated that Dr. Kahler is a family practitioner, as opposed to a specialist in the conditions Plaintiff claimed to be disabling. The ALJ found that Dr. Kahler's opinion appeared to be based solely on the claimant's subjective complaints, as Dr. Kahler saw Plaintiff only once and performed no objective tests indicating disability.

The ALJ summarily considered the four broad functional areas for evaluating mental disorders. The ALJ found Plaintiff was mildly limited in activities of daily living, as he lives independently and manages his own affairs. As to social functioning, the ALJ found Plaintiff to be mildly limited, with a history of antisocial behavior but no significant legal history and no evidence that his conduct is not within his control. Turning to concentration, persistence, and pace, the ALJ found that Plaintiff was mildly limited, with no objective evidence of deficits and testing establishing malingering. Finally, the ALJ concluded that Plaintiff had no episodes of decompensation, as the periods of hospitalization were related to failure to take prescribed medication, acute external stressors, and illegal drug abuse. The ALJ determined that Plaintiff's mental impairment was nonsevere.

In evaluating Plaintiff's credibility, the ALJ emphasized the evidence of malingering. He commented that Plaintiff has a sporadic work history. The ALJ noted that Plaintiff's work record indicates that Plaintiff did not leave the work force solely because of his impairments, but rather due to insubordination, sexual harassment, and criminal conduct.

Because the ALJ determined that Plaintiff's impairments were not severe, the ALJ stopped his analysis at Step Two of the sequential disability evaluation process. The ALJ found Plaintiff was not disabled.

## II.     Discussion

Plaintiff argues that the ALJ erred in finding that Plaintiff does not have a severe impairment, that the medical evidence does not support Plaintiff's claim, and that Plaintiff's subjective complaints were not entirely credible. The Court must determine whether there was substantial evidence in the record to support the ALJ's finding that Plaintiff does not have a disability entitling him to benefits. *Dixon v. Barnhart*, 324 F.3d 997, 1000 (8th Cir. 2003). "Substantial evidence is relevant evidence that reasonable minds might accept as adequate to support the decision." *Id.* (citations omitted). The Court must defer "heavily" to the findings and conclusions of the ALJ. *See Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008). "The decision of the ALJ is not outside the zone of choice simply because [a reviewing court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quotation omitted).

### A.     Severe Impairment

The ALJ stopped his analysis at Step Two of the sequential evaluation process, determining that Plaintiff failed to establish the existence of a severe impairment or combination of impairments. *See Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir.2001)

(noting claimant has burden of showing severe impairment at step two, but that burden "is not great"). A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities without regard to age, education, or work experience for not less than twelve months. 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a). Basic work activities encompass the abilities and aptitudes necessary to perform most jobs. Included are physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, performing, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work situation. 20 C.F.R. §§ 404.1521(b), 416.921(b).

"The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Caviness*, 250 F.3d at 605 (citation omitted). At Step Two, "[s]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007) (citation omitted). The First Circuit has explained that step two is "a threshold test of medical severity to screen out groundless claims - i.e., those claims that, on a common sense basis, would clearly be disallowed were vocational factors to be considered." *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). Only those with "slight abnormalities" which do not significantly limit "any basic work activity" can be denied

11

benefits at Step Two without undertaking the subsequent steps of the disability evaluation process. *See Brown v. Bowen*, 827 F.2d 311, 312 (8th Cir. 1987) (citations omitted).

Considering the record as a whole, the ALJ erred in ceasing his analysis at Step Two based on a finding that Plaintiff did not have a severe impairment. Plaintiff was repeatedly diagnosed with mental disorders, including depression and anxiety disorders, and prescribed antidepressants. Plaintiff's most recent medical assessment – from his treating physician, Dr. Kahler – indicates that he was markedly limited in several areas of mental health functioning. *See* 20 C.F.R. § 416.927(d)(2) (stating that, generally, treating physicians' opinions are entitled to controlling weight). Perhaps most significantly, Plaintiff was repeatedly hospitalized for psychological symptoms, including bipolar disorder, antisocial behavior, major depression and homicidal/suicidal ideation.

The record shows that Plaintiff suffered from more than "slight abnormalities" which interfered with his ability to perform work-related functions, particularly those related to judgment and responding to work situations. Even absent Plaintiff's subjective complaints of his symptoms (which the ALJ found not entirely credible), significant evidence indicates that Plaintiff met his *de minimus* burden at Step Two. The ALJ erred in stopping his analysis.

12

## III.     Conclusion

The ALJ's finding that Plaintiff did not have a severe impairment or combination of impairments is not supported by substantial evidence. Accordingly, it is hereby ORDERED that Plaintiff's petition [Doc. # 5] is GRANTED IN PART. The decision of the ALJ is REVERSED and the case is REMANDED for further consideration consistent with this Order.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  September 8, 2009
Jefferson City, Missouri